## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JEREMY CHAISSON, individually and on behalf of all others similarly situated | § § § | Docket No. 4:16-cv-01546 |
| Plaintiff, | § § | |
| vs. | § § | JURY TRIAL DEMANDED |
| MUDTECH SERVICES, L.P. | § § § | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### SUMMARY

1.      Plaintiff Jeremy Chaisson ("Plaintiff" or "Chaisson") brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") from Defendant MudTech Services, L.P. ("MudTech" or "Defendant").

2.      MudTech employs Solids Control Consultants to provide services to various oil and gas companies across the United States.

3.      MudTech maintains a practice and policy of classifying its Solids Control Consultants as independent contractors in order to avoid paying these workers overtime compensation for all hours worked over 40 hours in a week, as required by the FLSA and/or state overtime laws.

4.      During the relevant statutory time period, Plaintiff worked for MudTech as a Solids Control Consultant and was classified as an independent contractor.  Even though Plaintiff and the other workers like him regularly worked in excess of 40 hours in a week, they were never paid overtime compensation. Instead, MudTech improperly classified these workers as independent contractors and paid them a day-rate and sometimes a per diem.

5.      Accordingly, Plaintiff brings this collective action under the FLSA to recover the unpaid wages and other damages owed to him and those workers who are similarly situated.

## JURISDICTION & VENUE

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question. 29 U.S.C. § 216(b).

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the relevant events occurred in this District and Division.

## PARTIES

8.      Plaintiff Jeremy Chaisson worked exclusively for MudTech during the relevant statutory time period as a Solids Control Consultant.

9.      Plaintiff worked as a Solids Control Consultant for MudTech as a 1099 independent contractor over the course of his employment with MudTech.   Specifically, Plaintiff worked exclusively for MudTech from approximately March 2013 until June 2014. His consent to be a party plaintiff is attached as Exhibit 1.

10.     As a Solids Control Consultant, Plaintiff's job duties (and those of the other Solids Control Consultants) consisted primarily of technical and manual labor.

11.     Plaintiff (and the other Solids Control Consultants) was paid a day-rate and sometimes a per diem for all hours he worked and was classified as an independent contractor.  Plaintiff and the other Solids Control Consultants never received overtime pay despite the fact they worked well over 40 hours in a single week.

12.     Plaintiff brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by MudTech's day-rate system.  MudTech paid each of these workers a flat amount for each day worked and failed to pay them overtime for all

hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA. The class

of similarly situated employees ("Putative Class Members") consists of:

> **ALL CURRENT AND FORMER SOLIDS CONTROL CONSULTANTS THAT WORKED FOR MUDTECH SERVICES, L.P., DURING THE PAST THREE (3) YEARS WHO WERE CLASSIFIED AS INDEPENDENT CONTRACTORS AND PAID A DAY-RATE.**

13.     Defendant **MudTech Services, L.P.,** is headquartered in this District and Division and

may be served with process by serving either its registered agent, **National Corporate Research,**

**Ltd., 1601 Elm St., Suite 4360, Dallas, TX 75201.**

## FLSA COVERAGE

14.     At all times hereinafter mentioned, Defendant has been an employer within the

meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15.     MudTech directly controlled the job duties, work schedules, tools used, policies and

procedures implemented, and all other aspects of Plaintiff and the Putative Class Members' jobs.

16.     MudTech's misclassification of Plaintiff and the Putative Class Members independent

contractors does not alter its status as an employer for the purposes of this FLSA collective action.

17.     As will be shown though this litigation, MudTech treated Plaintiff and the Putative

Class Members as employees and uniformly dictated the pay practices Plaintiff and its other

employees (including its so-called "independent contractors") were subjected to.

18.     At all times hereinafter mentioned, MudTech has been part of an enterprise within the

meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19.     At all times hereinafter mentioned, MudTech has been part of an enterprise engaged in

commerce or in the production of goods and services for commerce within the meaning of Section

3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

20.     MudTech's employees, including Plaintiff, handle, sell, or otherwise work on goods or materials – such as tools, oilfield equipment, cell phones, and tanks - that have been moved in or produced for commerce.

21.     MudTech's annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

22.     Indeed, MudTech provides oil field service personnel to thousands of wells located throughout the United States.

23.     Because "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA[,]" *Dunlop v. Industrial America Corp*., 516 F.2d 498, 501–02 (5th Cir.1975), it would be silly for an employer with multi-state operations like MudTech to waste this Court's time arguing it is not a covered enterprise.

24.     At all times hereinafter mentioned, Plaintiff and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

25.     MudTech is a global oilfield services company with significant operations throughout the United States.  MudTech provides oil field personnel to operators and other oil field services companies in need of alternative project staffing for mud operations.

26.     To offer these services, MudTech employs numerous oil field workers, including, but not limited to, Solids Control Consultants that it classifies as independent contractors. MudTech employed these workers on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.  Specifically, MudTech classified all of its Solids Control Consultants as independent contractors and paid them a flat sum for each day worked, regardless of the number of

hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

27.     For example, Plaintiff worked exclusively for MudTech as a Solids Control Consultant from approximately March 2013 through June 2014. Throughout his employment with MudTech, he was classified as an independent contractor and paid a day-rate with no overtime compensation.

28.     As a Solids Control Consultant, Plaintiff and the Putative Class Members' primary job duties included maintaining and operating solids control equipment and rigging up and rigging down oilfield equipment.  Plaintiff and the Putative Class Members would conduct their day-to-day activities within designated parameters and in accordance with specifications provided by MudTech and/or MudTech's clients.

29.     Plaintiff and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by Defendant and/or its clients. Virtually every job function was predetermined by Defendant and/or its clients, including the tools to use at a job site, the schedule of work, and related work duties. Plaintiff and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters. Moreover, Plaintiff and the Putative Class Members' job functions were primarily technical and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

30.     Plaintiff and the Putative Class Members did not have any supervisory or management duties.

31.     MudTech denied Plaintiff and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice. Plaintiff and the Putative Class Members regularly worked in excess of 40 hours a week, but never received overtime compensation. Instead of paying overtime,

MudTech classified Plaintiff and the Putative Class Members as independent contractors and paid them a day-rate for all hours worked.

32.    The work Plaintiff and the Putative Class Members performed was an essential part of MudTech's core business.

33.    During Plaintiff's employment with MudTech, he was classified as an independent contractor. MudTech exercised control over Plaintiff. MudTech did not require any substantial investment by Plaintiff in order for him to perform the work required of him. MudTech determined Plaintiff's opportunity for profit and loss. Plaintiff was not required to possess any unique or specialized skillset (other than that maintained by all other Solids Control Consultants) to perform his job.  Plaintiff worked exclusively for MudTech as an independent contractor approximately March 2013 through June 2014.

34.    Indeed, MudTech and/or its client controlled all of the significant or meaningful aspects of the job duties performed by Plaintiff.

35.    MudTech dictated to Plaintiff what company he worked with, the hours and locations he worked, and the rates of pay he received.

36.    Even though Plaintiff often worked away from MudTech's office without the presence of a direct supervisor, MudTech still controlled all aspects of Plaintiff's job activities by enforcing mandatory compliance with MudTech policies and procedures and/or its clients' policies and procedures.

37.    No real investment was required of Plaintiff to perform his job.  More often than not, Plaintiff utilized equipment provided by MudTech's clients to perform his job duties.  MudTech and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied the business in which Plaintiff worked.

38.     Plaintiff did not incur operating expenses like rent, payroll, marketing, and insurance.

39.     Plaintiff was economically dependent on MudTech during his employment with it.

40.     MudTech set Plaintiff's rates of pay and his work schedule and prohibited him from working other jobs for other companies while he was working on jobs for MudTech.

41.     MudTech directly determined Plaintiff's opportunity for profit and loss.

42.     Very little skill, training, or initiative was required of Plaintiff to perform his job duties.

43.     Plaintiff was not employed by MudTech on a project-by-project basis and instead worked exclusively for MudTech from approximately March 2013 through June 2014. In fact, Plaintiff was regularly on call for MudTech and was expected to drop everything and work whenever needed by MudTech.

44.     All of MudTech's Solids Control Consultants perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

45.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Putative Class Members all worked in excess of 40 hours each week, for weeks at a time. Instead of paying them overtime, Defendant paid the Putative Class Members a day-rate and sometimes a per diem.  Defendant denied the Putative Class Members overtime for any and all hours worked in excess of forty (40) hours in a single workweek.

46.     MudTech's policy of failing to pay its independent contractors, including Plaintiff, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

47.     It is undisputed that the contractors are operating oilfield machinery, performing manual labor, and working long hours out in the field.

7

48.     MudTech denied Plaintiff and the other Solids Control Consultants overtime pay as a result of a widely applicable, illegal pay practice. All Putative Class Members, including Plaintiff, were misclassified as independent contractors and regularly worked in excess of 40 hours a week, but never received overtime compensation. MudTech applied this pay practice despite clear and controlling law that states that the manual labor/technical duties which were performed by Plaintiff and the Putative Class Members are *non*-exempt work.

## FLSA VIOLATIONS

49.     MudTech violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing Plaintiff and the Putative Class Members in an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating them for their employment in excess of 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

50.     MudTech knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay overtime to Plaintiff and the Putative Class Members.

51.     MudTech's failure to pay overtime at the correct rate was neither reasonable or made in good faith.

52.     Accordingly, Plaintiff and the Putative Class Members are entitled to overtime in an amount equal to 1 and ½ times his rate of pay, plus liquidated damages, benefits, attorney's fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

53.     Numerous employees have been victimized by this pattern, practice and policy which are in willful violation of the FLSA. Many of these employees have worked with Plaintiff and have reported that they were paid in the same manner and were not properly compensated for all hours

worked as required by the FLSA. Thus, from his observations and discussions with these employees, Plaintiff is aware that the illegal practices or policies of Defendant have been imposed on the Putative Class Members.

54.     The Putative Class Members all were classified as independent contractors, received a day-rate, regularly worked in excess of forty (40) hours per week, and were not paid overtime compensation. These employees are victims of Defendant's unlawful compensation practices and are similarly situated to Plaintiff in terms of relevant job duties, pay provisions, and employment practices.

55.     The specific job titles or precise job locations of the various Putative Class Members does not prevent collective treatment.  All of the Putative Class Members, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of forty (40) hours per week. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

**JURY DEMAND**

56.     Plaintiff demands a trial by jury.

**RELIEF SOUGHT**

57.     WHEREFORE, Plaintiff prays for the following relief against MudTech:

a)      An order allowing this action to proceed as a collective action under the FLSA and directing notice to the Putative Class Members;

b)      An order finding MudTech liable for unpaid back wages due to Plaintiff (and those who have joined this suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those who have joined this suit);

9

c)      An order awarding Plaintiff (and those who have joined this suit) the costs of this action;

d)      An order awarding Plaintiff (and those who have joined this suit) their attorneys' fees;

e)      Judgment awarding Plaintiff (and those who have joined this suit) unpaid benefits, compensation, attorney's fees, expenses, and costs, in connection with the FLSA violations;

f)      An order and judgment awarding Plaintiff (and those who have joined this suit) pre- and post-judgment interest at the highest rates allowed by law;

g)      An order and judgment granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Michael A. Josephson

**Michael A. Josephson**
Fed. Id. 27157
State Bar No. 24014780
**Lindsay R. Itkin**
Fed Id. 1458866
State Bar No. 24068647
**Andrew W. Dunlap**
Fed Id. 1093163
State Bar No. 24078444
**Jessica M. Bresler**
Fed Id. 2459648
State Bar No. 24090008
**FIBICH, LEEBRON, COPELAND,
BRIGGS & JOSEPHSON**
1150 Bissonnet
Houston, Texas 77005
713-751-0025 – Telephone
713-751-0030 – Facsimile
mjosephson@fibichlaw.com
litkin@fibichlaw.com
adunlap@fibichlaw.com
jbresler@fibichlaw.com

**AND**

**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

11